IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONNIE E. JOHNSON, | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : No. 10-5027 |
| MICHAEL E. WENEROWICZ, ET AL., | : |
| Defendant. | : |

**MEMORANDUM**

**ROBERT F. KELLY, Sr., J.**                                                  **APRIL 8, 2011**

Presently before the Court are the Commonwealth Defendants' Motion to Dismiss ("Motion to Dismiss") filed by Defendants Michael E. Wenerowicz ("Wenerowicz"), Michael Lorenzo ("Lorenzo"), Gary Olinger ("Olinger"), and Dan White ("White") (collectively, "Defendants") and Plaintiff's Opposition of Commonwealth Defendants' Motion to Dismiss ("Plaintiff's Opposition") filed by Plaintiff Ronnie E. Johnson ("Plaintiff"). For the reasons set forth below, Defendants' Motion will be granted.

**I.**      **FACTS**

On October 27, 2010, Plaintiff filed a Complaint against Defendants in their individual and official capacities, seeking injunctive and monetary relief stemming from his placement in the Special Management Unit ("SMU")[1] at the State Correction Institution ("SCI") at Graterford

---

[1] The SMU is a special unit within designated Department of Corrections ("DOC") facilities designed to safely and humanely handle an inmate whose behavior presents a serious threat to the safety and security of the facility, staff, other inmates, or [himself]. DC-AMD 801, Inmate Discipline Procedures Manual, Glossary of Terms (2008).

("Graterford").[2] In their official capacities, Wenerowicz is Superintendent of Graterford, Lorenzo is Deputy Superintendent of Graterford, Olinger is Correctional Classification Program Manager at Graterford, and White is Lieutenant on J Block, SMU. On October 27, 2010, Plaintiff filed a First Amended and Supplemental Complaint ("Amended Complaint") against the same Defendants, which contained substantially the same allegations and claims.

In the Amended Complaint, Plaintiff alleges that on May 26, 2010, White and Olinger ordered him to be placed in the SMU after a Program Review Committee ("PRC") hearing in violation of his procedural due process rights because they did not articulate a reason for their decision in a form called a DC-141 part 4.[3] (Am. Compl. ¶ 8.) Although Plaintiff does not explain whether he was placed in the SMU for disciplinary or administrative reasons, we assume that Plaintiff was placed in the SMU for administrative reasons.[4] On May 29, 2010, Plaintiff filed his first appeal of the PRC decision to Wenerowicz, claiming that White and Olinger intentionally violated his due process rights at the PRC hearing and that White's decision was based on discrimination against him. Id. ¶ 9. On June 6, 2010, Wenerowicz denied Plaintiff's appeal citing to Pennsylvania DOC policies DC-ADM 801 and 802 as the basis for his denial.

---

[2] Prior to filing the Amended Complaint, Plaintiff filed a Complaint containing allegations that are substantially the same as the Amended Complaint on October 27, 2010.

[3] Plaintiff is most likely referring to a form called a DC-141, Part IV, Facility Manager's Review (Attachment 6A), which documents the PRC's reasons for recommending transfer to a SMU. DC-ADM, 801 Inmate Discipline Procedures Manual § 6(B)(1) (2008).

[4] Defendants do not offer a classification or reason for Plaintiff's segregation in their Motion to Dismiss. However, we reach our conclusion that Plaintiff's placement was administrative because an inmate who is confined in disciplinary custody may only be confined for ninety days per misconduct charge. DC-ADM 801, Glossary of Terms "Disciplinary Custody." Here, Plaintiff was confined in the SMU for approximately five months and does not allege that he received any misconduct charges.

Id. ¶ 10.  On June 9, 2010, Plaintiff filed an appeal to Chief Hearing Examiner Robert B. McIntyre, which was denied on June 16, 2010.

Plaintiff alleges that his due process rights were again violated on August 18, 2010, at a PRC hearing before Lorenzo and Olinger, who decided that Plaintiff should remain in the SMU. Id. ¶ 12.  The basis of Plaintiff's claim is that he was not provided with a DC-141 part 4.  Id.  On August 24, 2010, Plaintiff appealed the PRC's decision to Wenerowicz, who granted Plaintiff another PCR hearing due to the DC -141 part 4 deficiency.  Id. ¶¶ 13-14.  On September 17, 2010, Plaintiff attended a PRC hearing before Major Francis Fields,[5] White, and Olinger.  Id. ¶ 14.  Plaintiff alleges that they failed to "establish a substantiated reason" for their decision to keep him in the SMU.  Id.  On October 12, 2010, Plaintiff was transferred to SCI at Fayette ("Fayette").  Id. ¶ 15.  Plaintiff claims that he has still not received a DC-141 part 4 regarding the PRC's decision to keep him in the SMU.  On January 24, 2011, Plaintiff notified the court that he had been temporarily transferred to Montgomery County Correctional Facility ("MCCF") to defend himself in a criminal proceeding.

As a result of the foregoing events, Plaintiff claims Defendants violated his Fourteenth Amendment right to procedural due process rights, his Fourteenth Amendment right to equal protection, his Eighth Amendment right to be free from cruel and unusual punishment, and his Pennsylvania Constitutional rights.  (Am. Compl. ¶¶ 16-19.)  Plaintiff requests injunctive, declaratory, and compensatory relief as well as punitive damages from Defendants and "also those that stood in authority and could have stopped such an unreasonable request for SMU

---

[5] Major Francis Fields is not a named defendant and Plaintiff does not explain his role at the PRC hearing.

placement." Id. ¶ 19.

On December 23, 2010, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Defendants argue that Plaintiff's equitable claims are moot, Plaintiff cannot recover a monetary award from Defendants in their official capacities, Plaintiff failed to state a § 1983 claim against Defendants in their individual capacities, and Plaintiff's state law claims are barred by sovereign immunity. On January 13, 2011, Plaintiff filed an Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opposition").

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007). Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so underdeveloped that [they do] not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct." Id. (alteration in original) (quoting Twombly, 550 U.S. att 563 n.8). Furthermore, the

complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. (quoting Twombly, 550 U.S. at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed. The Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *6 (E.D. Pa. Apr. 8, 2009). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). A complaint filed by a *pro se* defendant is to be liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Iles v. Deparlos, 2009 WL 3103736 at *3 (M.D. Pa. 2009) (citing Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007)). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## II. DISCUSSION

## A. Mootness of Plaintiff's Requests for Injunctive and Declaratory Relief

A federal court has neither the power to render advisory opinions nor to decide questions which cannot affect the rights of litigants in the case before them. Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) (citing Preiser v. Newkirk, 422 U.S. 395, 401 (1975)). An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. Id. (citing Abdul-Akbar v. Watson, 4 F.3d 195, 197 (3d Cir. 1993)). But these claims are not mooted if they present a question that is capable of repetition, yet evading review. Akbar, 4 F.3d at 206. The "capable of repetition" doctrine is a narrow exception to the mootness principle and is limited to cases presenting two elements: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, *and* (2) there [is] a reasonable likelihood that the same complaining party *would* be subjected to the same action again." Id. (emphasis in original) (citing Weinstein v. Bradford, 423 U.S. 147, 149 (1975)).

In Akbar, a § 1983 action, the Court of Appeals held that a district court's order for injunctive relief in favor of a formerly incarcerated plaintiff and against prison officials violated mootness principles where the plaintiff was released prior to filing suit and prior to the district court's order. Akbar, 4 F.3d at 207. The court found that none of the requirements necessary to invoke the "capable of repetition" exception were present because the plaintiff did not assert that "mootness could be avoided on the ground that inmates at MSU fail to remain confined in that facility for a sufficient length of time to fully litigate a legal claim or that a class action (never filed by the plaintiff) would be unavailing" and because the plaintiff "had not demonstrated a probability that he would again be among the MSU inmate population." Id. at 206-07 (citations

6

omitted).  As such, the Court of Appeals held that the exception did not apply and that the plaintiffs claims were moot from the outset of the litigation.  Id. at 207.

Defendants do not address the "capable of repetition" doctrine but they do argue that Plaintiff's transfer to Fayette, which occurred on October 12, 2010, renders Plaintiff's claims for injunctive relief moot because the claims are against officials of Graterford and not those at Fayette.  (Mot. to Dismiss at 6.)  Plaintiff seeks to obtain a permanent and immediate injunction which: (1) requires a "special assessment unit transfer for a follow-up psychological evaluation," (2) "prohibits SMU transfer for unlawful application," and (3) orders Defendants to "pay all costs and reasonable attorney fees of Plaintiff."  (Am. Compl. ¶ 19.)

Like the plaintiff in Akbar, Plaintiff is no longer confined in the facility of which he complained nor in the custody of those individuals of whom he complained since Defendants are employees of Graterford.  Since filing the Complaint, Plaintiff has been transferred to Fayette and also to Montgomery County Correctional Facility ("MCCF"), though possibly on a temporary basis.  Under these circumstances, we can order no meaningful relief from Defendants as they are not employed by Fayette or MCCF.  Any relief that Plaintiff seeks now could only be granted if he were still at Graterford.  Thus, we find that Plaintiff's equitable claims against Defendants are mooted by his transfer to another facility.

Moreover, Plaintiff, like the Akbar plaintiff, has not pled any facts or presented any argument on the "capable of repetition" doctrine.  First, Plaintiff has not asserted that mootness could be avoided on the ground that similarly situated inmates fail to be confined long enough to fully litigate the claims or that a class action would be unavailing.  Even if we were to interpret Plaintiff's transfer to Fayette prior to commencing this suit as evidencing the brevity of the

contested action and thus, fulfilling the first requirement, Plaintiff would still fail the second requirement because there is no indication that he would be confined at Graterford again. Without any indication of whether it is likely that Plaintiff will again be confined at Graterford, we will have to hazard a guess. As the Court of Appeals said in Akbar, "conjecture has no place in the application of this exceptional and narrow grant of judicial power." Akbar, 4 F.3d at 207. Accordingly, we find that Plaintiff's equitable claims against Defendants are moot.

### B. Sovereign Immunity Applied to Defendants in Their Official Capacities

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. Am. XI. An unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990) (citing Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 100 (1984)). Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because "official capacity suits generally represent only another way of pleading an action against the state." Betts v. New Castle Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010) (citing Lombardo v. PA Dept. of Pub. Welfare, 540 F.3d 190, 194 (3d Cir. 2008)). Despite its broad application to States and their employees sued in their official capacity, the Eleventh Amendment bar to suit is not absolute. Id. For instance, States may consent to suit in federal court, and, in certain cases, Congress may abrogate the States' Sovereign Immunity. Id. (internal citations omitted). However, Pennsylvania has not waived its sovereign immunity in §

1983 civil rights cases and Congress did not abrogate state immunity in general in enacting civil rights litigation, including § 1983.[6] O'Hara v. Indiana Univ. of PA, 171 F.Supp. 2d 490, 495 (2001) (citing Quern v. Jordan, 440 U.S. 332, 342 (1979)).

Defendants argue that the Eleventh Amendment affords them protection from suit in their official capacities because they are employees of the Pennsylvania DOC, a Pennsylvania agency, and Pennsylvania has not consented to be sued in federal court for § 1983 violations. (Mot. to Dismiss at 6-7.) Defendants also argue that they are not considered "persons" who may be sued for money damages under 1983 in their official capacity. Plaintiff does not directly address these arguments.

Here, the threshold question is whether the Pennsylvania DOC is a state agency for purposes of sovereign immunity. We find that it is. The Supreme Court in Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989), held that neither a state nor its officials acting in their official capacities are "persons" under § 1983. Will, 491 U.S. at 71. Pennsylvania law designates the Department of Corrections as part of its executive department. 71 P.S. § 61 (2010). Furthermore, the Third Circuit has held that the Pennsylvania DOC shares in the Commonwealth's Eleventh Amendment immunity by virtue of the fact that it is a part of the executive department of the State. Lavia v. Dept. of Corr., 224 F.3d 190, 195 (3d Cir. 2000). Wenerowicz, Lorenzo, Olinger, and White are employees of the Pennsylvania DOC, a

---

[6] 42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law.

Pennsylvania state agency, and are, therefore, protected state employees. Thus, we find that Eleventh Amendment sovereign immunity bars Plaintiff's claims against Defendants in their official capacities.

### C. Sovereign Immunity Applied to Defendants in Their Individual Capacities

The Third Circuit specifically recognizes that state officials sued for damages in their individual capacities are "persons" under § 1983 and therefore subject to suit. Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990). In a suit against State officials in their individual capacities, where the plaintiff seeks recovery from the personal assets of the individual, the State is not the real party in interest and so the suit is not barred by the Eleventh Amendment. Id. Even so, a plaintiff must allege that the defendant in a civil rights action had personal involvement in committing the alleged violation. Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988); see also Reaves v. Vaugh, No. 00-2786, 2001 WL 936392 at *4 (E.D. Pa. Aug. 10, 2001). We find that Plaintiff has adequately alleged that Defendants were personally involved in the actions at issue and we will consider Plaintiff's claims against Defendants in their individual capacities on the merits.

#### 1. Plaintiff's Due Process Claims

First, we will consider whether Defendants have deprived Plaintiff of his right to procedural due process of law, applied to the States through the Fourteenth Amendment. The Fourteenth Amendment provides in relevant part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The "due process of law" essentially requires that the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty, or property. Dantzler v. Beard,

2007 WL 5018184 at *2 (W.D. Pa. Dec. 6, 2007) (citing Zappan v. PA Bd. of Probation and Parole, 152 Fed. Appx. 211, 220 (3d Cir. 2005)). Thus, to establish a prima facie case of a procedural due process violation, a plaintiff must establish: (1) the existence of a liberty or property interest; (2) that the state deprived the person of it; and (3) that the deprivation was accomplished without the procedural protections of notice and an opportunity to be heard. Id.

Our procedural due process analysis involves a two-step inquiry: the first step is to ask whether the complaining party has a protected liberty or property interest within the contemplation of the due process clause of which he has been deprived and, if so, the second question is whether the process afforded to the complaining party to deprive him of that interest comported with Constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). A protected liberty interest may arise from one of two sources: (1) directly from the Fourteenth Amendment's due process clause itself or (2) from state law. Dantzler 2007 WL 5018184 at *2 (citing Hewitt v. Helms, 459 U.S. 460, 466 (1983)).

Defendants argue that transfer to the SMU does not implicate a liberty interest and, alternatively, that even if we find that Plaintiff's placement in the SMU did implicate a protected liberty interest, Plaintiff was afforded adequate procedural protections in the placement process. (Mot. to Dismiss at 10.)

We agree with Defendants that transfer to the SMU does not implicate a liberty interest. The Supreme Court, in Sandin v. Conner, 515 U.S. 472, 484 (1995), held that a prisoner is deprived of a liberty interest when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. Under Sandin, we must consider the duration of the disciplinary confinement and the condition of that confinement

in relation to other prison conditions to determine whether a liberty interest exists. Id. at 484. In the wake of Sandin, the Third Circuit held that "[t]he baseline for determining what is 'atypical and significant' - the 'ordinary incidents of prison life' - is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Griffin v. Vaughn, 112 F.3d 706, 706 (3d Cir. 1997) Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law. Id. (citing Sandin, 515 U.S. at 485).

Although Plaintiff does not expressly state the duration of his confinement in the SMU, we deduce that it was approximately five months.[7] In spite of the fact that no prescribed amount of time spent in a more restrictive housing automatically creates a liberty interest, the Third Circuit has held that administrative confinement lasting fifteen months did not implicate a liberty interest. Griffin, 112 F.3d at 706-07. Conversely, the Third Circuit has held that administrative, solitary confinement for a period of eight years did implicate a liberty interest. Shoats, 213 F.3d at 144. Under these circumstances, we find that five months confinement in the SMU did not create a liberty interest in and of itself. Plaintiff's sole factual allegations relating to the increased hardship imposed on him by his transfer to the SMU consists of the statement that "not even 1% of the DOC is housed in the SMU." (Pl.'s Opposition at 2.) Plaintiff does not plead any facts indicating the atypical nature of the hardship imposed by his confinement in the SMU. Because Plaintiff has failed to provide any basis by which to compare his "ordinary incidents of prison life" to those he experienced while confined in the SMU, we decline to find that he was

---

[7] Plaintiff was recommended for placement to the SMU on May 26, 2010 and remained there until he was transferred to Fayette on October 12, 2010. (Compl. ¶¶ 8, 15.)

deprived of a liberty interest.

Furthermore, we find that any failure by Defendants to supply Plaintiff with a DC-141 Part IV form did not infringe on any state created liberty interest warranting procedural due process protections. Sandin stands for the principle that a court's liberty interest inquiry should focus on the nature of the deprivation and not the language of a particular regulation. 515 U.S. at 481. The Sandin Court held that an approach focused on the language of a particular regulation "may be entirely sensible in the ordinary task of construing a statute defining rights and remedies available to the general public." Id. However, it went on to state that such an approach "is a good deal less sensible in the case of a prison regulation primarily designed to guide correctional officials in the administration of a prison." Id. at 481-82. We follow Sandin and narrow our focus on the nature of the deprivation, which, as we have determined, is not the kind of deprivation that implicates a protected liberty interest. Therefore, we will dismiss Plaintiff's Procedural Due Process claim.

2. Plaintiff's Equal Protection Claim

Next, we will consider whether Plaintiff adequately states a Fourteenth Amendment Equal Protection cause of action. In Plaintiff's Amended Complaint, he states: "...[D]efendants intentionally failed to apply the procedures regarding non-ordinary incidents of prison life with the intent to cause [P]laintiff further psychological harm all in violation of the 14th Amendment of the U.S. Const. 'EQUAL PROTECTION CLAUSE.'"[8] (Am. Compl. ¶ 17.) In Plaintiff's

---

[8] Plaintiff also references prison policy DC-ADM 801 and Wilkinson v. Austin, 545 U.S. 209 (2005) in support of his Equal Protection claim but they are more closely related to his Procedural Due Process claim and appear to have little relation to his Equal Protection claim. Wilkinson only addressed an inmate's Procedural Due Process claim under the Fourteenth Amendment and did not address Equal Protection. See Wilksinson, 545 U.S. 209. As such, we

13

Opposition, he asserts that he was entitled to a psychological evaluation at SCI Waymart[9] ("Waymart"), which he never received, prior to his transfer to the SMU at Graterford because he suffers from a "psychological disorder" - "Bipolar Affective Disorder to a Psychotic Degree."[10] (Am. Compl. ¶ 13.)

"To bring a successful claim under § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." Stockley v. Darby Borough, 2011 WL 665800 at * 3 (E.D. Pa. Sept. 28, 2011) (citing Chambers ex rel. Chambers v. School Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009)). Specifically, a plaintiff stating a claim under the Equal Protection Clause must allege that he has been treated differently because of his membership in a suspect class . . . or that he has been treated differently from similarly-situated others. Id. (citing Young v. New Sewickley Twp., 160 Fed. App'x. 263, 266 (3d Cir. 2005)).

      a.      Mental Illness as a Suspect Class

Although Plaintiff does not specifically state that he is a member of a suspect class in his Amended Complaint, he incorporates all factual allegations into his Equal Protection count,

---

will interpret his allegations to mean that the specific procedures which he claims he was denied are those relating to prison policy DC-ADM 801.

[9] Waymart is a Pennsylvania DOC facility that houses mentally disabled male inmates who require inpatient psychiatric care and Treatment. http://www.portal.state.pa.us/portal/server.pt/community/ department_of_corrections/; follow "Institutions" hyperlink; follow "SCI Waymart" hyperlink. The facility also houses minimum-security inmates. Id.

[10] Throughout Plaintiff's Amended Complaint and Opposition, he uses the terms "psychological ailment" and "mentally ill" to describe his Bipolar Disorder. Plaintiff also uses the terms "Bipolar Affective Disorder to a Psychotic Degree" and "Bipolar Disorder" interchangeably to describe his particular psychological condition. We will refer to Plaintiff's Bipolar Disorder as a mental illness.

which includes the allegation that he suffers from a mental illness. (Am. Compl. ¶ ¶ 13, 17.) Because Plaintiff is proceeding *pro se* and is, therefore, held to less stringent pleading standards, we will consider whether mental illness is a suspect class. In Doe v. Colautti, 454 F.Supp. 621, 632 (E.D. Pa. 1978), the court held that the "mentally ill" are not a suspect class for purposes of Equal Protection analysis. 454 F. Supp. at 632. We based this determination upon the innate differences between classes that are traditionally held to be suspect or quasi-suspect and the classification of "mentally ill." Id. at 631. For instance, classes that have traditionally been held to be suspect such as race or national origin are based on an immutable characteristic based solely upon the accident of birth. Id. (citing Frontiero v. Richardson, 411 U.S. 677, 686 (1973)). However, the inheritance of a mental illness is not inevitably resolved at birth. Id. Thus, the Colautti court held that mental illness is appropriately grouped with intelligence and physical disability, which are not suspect classes for purposes of Equal Protection analysis. Id. at 631-32. Because the mentally ill are not recognized as a suspect class, we find that Plaintiff is not a member of a suspect class.

b. Plaintiff's "class-of-one" Equal Protection Claim

Because Plaintiff is not a member of a suspect class, we will consider whether Plaintiff successfully states a "class-of-one" Equal Protection claim. In a "class-of-one" Equal Protection claim, the plaintiff alleges that he has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. Village of Willbrook v. Olech, 528 U.S.C. 562, 564 (2000). At the very least, to state a claim under this theory, a plaintiff must allege that: (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in

15

treatment. Gagliardi v. Clark, 2006 WL 2847409 at * 11 (W.D. Pa. Sept. 28, 2006) (citing Hill v. Borough of Kutztown, 455 F.3d 225, 238 (3d Cir. 2006)). Moreover, courts within the Third Circuit have required that a plaintiff plead specific instances of differential treatment to overcome a motion to dismiss. Prof'l Dog Breeders Advisory Council v. Wolff, 2010 WL 4344554 at * 7 (E.D. Pa. Nov. 3, 2010); see also Conklin v. Warrington Twp, 304 Fed. Appx. 115 (3d Cir. 2008) (litigant provided no specific instances of defendant prothonotary handling any other litigant's documents differently or treating them differently otherwise); Young v. New Sewickley Twp., 160 Fed. Appx. 263, 266 (3d Cir. 2005) (disgruntled police officer failed to provide any specific instances of other police officer employees being treated in a dissimilar manner).

In Plaintiff's Amended Complaint, he alleges that Defendants failed to "apply" all administrative procedures under DC-ADM 801[11] with the intention of causing him "further psychological harm." (Am. Compl. ¶ 17.) In Plaintiff's Opposition, he asserts that it was Defendants' failure to order him "the usual" psychological evaluation prior to his transfer to the SMU at Graterford that violated his Equal Protection rights. (Pl.'s Opposition at 3.) Despite such assertions, our task is to evaluate the sufficiency of the Amended Complaint. See Kost, 1 F.3d at 183. Defendants argue that Plaintiff should not prevail on this claim because "he has not alleged that he was treated differently from others in the SMU at Graterford who were similarly placed there and he has failed to allege that there was no rational basis for his treatment." (Mot. to Dismiss at 12.)

---

[11] Because Plaintiff does not expressly state which specific procedures were lacking pursuant to prison policy DC-ADM 801, we must assume from the allegations in his Amended Complaint that he is referring to Defendants' failure to supply him with a DC-141 part 4 form.

We find that Plaintiff has not alleged that he was intentionally treated differently from other similarly situated persons or treated differently for that matter. Here, Plaintiff has not identified anyone in his Amended Complaint who was similarly situated. He has, therefore, failed to allege the first critical part of a "class-of-one" Equal Protection claim. See Gagliardi, 2006 WL at * 11. In cases where "a plaintiff does not allege the existence of a similarly situated individual who was treated differently than himself, a defendant's motion to dismiss a plaintiff's equal protection claim will be granted." Prof'l Dog Breeders Advisory Council, 2010 WL at * 8 (citing Hill, 455 F.3d at 239). A mere allegation that the defendants violated the Equal Protection Clause will not suffice. Id.

Moreover, Plaintiff does not allege that Defendants acted without a rational basis for any difference in his treatment. (Am. Compl. ¶ 17.) We, thus, find that Plaintiff has failed to state the requirements elements of an Equal Protection claim.

### 3. Plaintiff's Eighth Amendment Claim

Generally, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care. Supples v. Adamo, 2010 WL 2218733 at * 1 (W.D. Pa. May 28, 2010) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1978)). Administrative confinement may amount to cruel and unusual punishment as proscribed by the Eighth Amendment. Johnston v. Vaughn, 2000 WL 1694029 at * 3 (E.D. Pa. Nov. 13, 2000). To establish a violation of the Eighth Amendment, an inmate must show that he has been deprived of "the minimal civilized measure of life's necessities." Id. (citing Griffin, 112 F.3d at 709). Unless evidence is adduced to the contrary, the conditions in administrative custody "clearly do not involve a deprivation of any basic human need." Id. (citing Griffin, 112 F. 3d at 709). Under the law, segregated

17

confinement, difficult as it may be to endure, does not itself constitute cruel and unusual punishment. Id. In the context of a claim regarding medical treatment, an inmate must show two elements to demonstrate a violation of his Eighth Amendment rights: (1) that he was suffering from a "serious" medical need; and (2) that the prison officials were "deliberately indifferent" to the serious medical need. Id. (citing Estelle, 429 U.S. at 104). Notably, even where there is a serious medical condition, a prisoner also must allege facts that would permit a jury to conclude that the defendant prison officials acted with a sufficiently culpable state of mind. Id.

Plaintiff alleges that Defendants violated his Eighth Amendment rights when they denied his requests to transfer him to another restricted housing unit, which he claims was warranted by virtue of his "psychological needs."[12] (Am. Compl. ¶ 18.) In Plaintiff's Opposition, he cites to Shoats v. Horn, 213 F.3d 140 (3d Cir. 2000) as properly setting forth the criteria for determining whether defendant prison officials have engaged in cruel and unusual punishment. (Pl.'s Opposition at 3.) However, the plaintiff in Shoats did not allege a violation of his Eighth Amendment rights and the court did not discuss it. See Shoats, 213 F.3d 140. Thus, Shoats is inapplicable. Defendants seek to dismiss this claim on the grounds that "Plaintiff has failed to allege that he was denied any basic human needs such as food, clothing, shelter, sanitation, medical care [or] personal safety." (Mot. to Dismiss at 13.)

We agree with Defendants that Plaintiff has failed to plead an Eighth Amendment claim. Plaintiff's allegations relating to his Eighth Amendment claims only demonstrate his dissatisfaction caused by Defendants' refusal to allow Plaintiff to dictate the terms of his

---

[12] We assume Plaintiff is referring to his Bi-Polar Affective Disorder, which he references throughout the First Amended Complaint and Opposition.

confinement. Plaintiff states: "denying Plaintiff a regular transfer to another Restricted Housing Unit (RHU) when requested amounts to cruel and unusual punishment based upon Plaintiff's psychological needs."[13] (Am. Compl. ¶ 18.) Plaintiff has not alleged that Defendants deprived him of any of his basic human needs in any way. Thus, we find that Plaintiff has failed to state a claim for a violation of his Eighth Amendment rights.

Furthermore, we cannot say without impermissibly speculating that Plaintiff is stating a claim regarding medical treatment. Plaintiff merely alleges that he suffers from a mental illness but does not allege that he had a serious medical need relating to the mental illness. (Am. Compl. ¶ 18.) Therefore, we will dismiss Plaintiff's Eighth Amendment claim.

    4.    Plaintiff's State Law Claims

All that remain are Plaintiff's state law claims. Plaintiff alleges that Defendants violated his rights under Article 1 §1[14] and §13[15] of the Pennsylvania Constitution and that Defendants committed "willful misconduct" pursuant to 42 Pa. C.S.A. § 8550.[16] (Am. Compl. ¶¶ 116, 18,

---

[13] Plaintiff uses the terms "SMU" and "RHU" interchangeably throughout his pleadings to describe his placement.

[14] Const. Art. 1 § 1 provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

[15] Const. Art. 1 § 13 provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."

[16] 42 Pa. C.S.A. § 8550 provides in pertinent part: "In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity) . . . shall not apply."

19

19.) We may exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. 1367, which states, in relevant part:

> . . . in any civil action over which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the Constitution.

28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c)(3), we may decline to exercise supplemental jurisdiction over a claim in subsection (a) if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Because we have dismissed Plaintiff's federal claims, we decline to exercise supplemental jurisdiction over Plaintiff's state law claims in this case. Accordingly, we will dismiss Plaintiff's state law claims.

An appropriate Order follows.